641 A.2d 674

John M. MORGANELLI, District Attorney of Northampton County, Pennsylvania, on behalf of the Commonwealth of Pennsylvania, Petitioner,

v.

Robert P. CASEY, Governor of the Commonwealth of Pennsylvania, and Mark Singel, Lieutenant Governor of the Commonwealth of Pennsylvania, Respondents (Two Cases).

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 1994.

Decided April 21, 1994.

John M. Morganelli, for petitioner.

Amy L. Putnam, Deputy Gen. Counsel, for respondent.

George S. Leone, Asst. Dist. Atty., for amicus curiae, the Pennsylvania Dist. Attys. Ass'n.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI and KELLEY, JJ.

CRAIG, President Judge.

These two cases present an important question of statutory interpretation with respect to carrying out sentences of death in criminal cases.

That question is:

When the judicial branch of the Commonwealth government, through the Supreme Court of Pennsylvania, certifies to the Governor that the judicial responsibilities as to imposition and review of the death sentence have been completed, by transferring the full case record to the Governor, does the Governor, in accordance with his constitutional responsibility to take care that the laws be faithfully executed, then have the legal duty to proceed with the responsibilities of the executive branch with respect to death sentences by his issuance of the death warrant so that there may then follow clemency proceedings, together with any reprieve of the death warrant needed for the same, and ultimately the implementation of the death sentence if no commutation or pardon is granted?

More specifically, the question is to be considered under the terms of the particular statute involved, as follows:

Where the Supreme Court, pursuant to its automatic review, upholds a death sentence and then transmits a complete record of the case to the Governor, and where, in one case, more than five years has expired since such a record transmittal and in another case more than three years has thus expired, can the Governor be required by mandamus to obey a statute which provides:

After the receipt of the said record the Governor of the Commonwealth shall issue a warrant, directed to the Secretary of Corrections, commanding that such inmate be executed within the week to be named in said warrant, and in the manner prescribed by law.

(Act of June 19, 1913, P.L. 528, § 3, *as amended,* herein cited as 61 P.S. § 2123, Death Penalty Procedures Act.)

## HISTORY OF THE CASE

■ The district attorney of Northampton County has instituted these mandamus actions, addressed to the original jurisdiction of this court, with respect to death sentence cases. The petitioner has also filed motions for peremptory judgment in mandamus, and preliminary objections have been filed on behalf of the Governor directed to the mandamus complaints. Under Pa.R.C.P. No. 1098, this court may enter peremptory judgment in mandamus "if the right of the plaintiff thereto is clear...." Peremptory judgment in mandamus is available only where the facts are not in doubt. _Commonwealth v. Mifflin County School Board,_ 30 Pa.Commonwealth Ct. 213, 399 A.2d 421 (1977). Therefore, for peremptory judgment, there must be both a clear basis in law and no dispute of fact.

There is no dispute concerning the facts of the two cases before us. As to the case at 367 M.D. 1993, on March 4, 1988, the Supreme Court completed its duty of automatic direct review on appeal, under 42 Pa.C.S. § 9711(h), and affirmed three death sentences imposed upon defendant Martin Appel. _Commonwealth v. Appel,_ 517 Pa. 529, 539 A.2d 780 (1988).

With respect to the aggravating circumstances warranting the death penalty, the opinion of the Supreme Court noted that, during a bank robbery, the defendant shot two tellers in the back, killing one instantly, pursued a fleeing bank official to kill her by shooting her twice in the back, and then shot the previously wounded teller again in the back to kill her—all with the purpose to murder any prospective eyewitnesses who could testify against him.

In the _Appel_ case, there have been no further appeals, habeas corpus petitions or any other judicial proceedings since the Supreme Court transmitted the certified record to the Governor under date of March 23, 1988.

As to the case at 444 M.D. 1993, on February 8, 1990 the Supreme Court affirmed a death sentence imposed on one Josoph Henry, _Commonwealth v. Henry,_ 524 Pa. 135, 569 A.2d 929 (1990), in an opinion which noted that the defendant, in burglarizing a dormitory room, attacked a young female

student, slashed her neck with broken glass, bit her face, raped her, sodomized her, strangled her, then beat her and murdered her to prevent her from identifying him. The Supreme Court transmitted the full record to the Governor by certification of March 9, 1990. The only further proceeding in this case was a petition to the United States Supreme Court for writ of certiorari, which that court denied on March 18, 1991. *Henry v. Pennsylvania*, 499 U.S. 931, 111 S.Ct. 1338, 113 L.Ed.2d 269 (1991).

Thus, the record establishes the facts presented here.

Counsel for the Governor has objected to the claims made in amicus curiae briefs submitted on behalf of the Pennsylvania District Attorneys Association, contending that, out of 168 inmates on death row, 97 have had their death sentences upheld by the Supreme Court, that delays in issuing death warrants, in 16 of those cases, have ranged between 4 to 6 years after the conclusion of judicial proceedings, and that no death warrant has been issued in 81 cases, involving delays at present of 1 to 9 years.

Because the attempt to place these claims on the record has lacked any of the proceedings required for proper judicial notice or other basis of admission, we grant the motion of counsel for the Governor to strike these claims from consideration.

## ANALYSIS

### 1. *Mandatory or Discretionary Nature of the Statutory Requirement*

After the Supreme Court has entirely completed the automatic appeal and review of a death sentence required by the Judicial Code, 42 Pa.C.S. § 9711(h), two statutory provisions command the Supreme Court to act. The Judicial Code, 42 Pa.C.S. § 9711(i), provides that "the Supreme Court shall transmit to the Governor a full and complete record," and the Act of June 19, 1913, P.L. 528, § 2, *as amended*, 61 P.S. § 2122, sets a time factor by providing that the transmittal of

the record shall occur "within 20 days after the final disposal of the cause upon such appeal."

There follows the provision directly at issue, at 61 P.S. § 2123, providing that, "After the receipt of the said record, the Governor ... shall issue a warrant ... commanding that such inmate be executed within the week to be named in said warrant...."

In providing that the Governor "shall" issue a warrant designating a week within which the death sentence is to be executed, does the law make the Governor's role mandatory and therefore subject to compulsion by mandamus or is the direction merely directory or permissive? In resolving that aspect this court must ascertain the legislative intent within the entire context of this statute by considering the nature and object of the law and the consequences of alternative outcomes. *West Penn Power Company v. Public Utility Commission*, 104 Pa.Commonwealth Ct. 21, 27, 521 A.2d 75, 78 (1987). As this court there stated, "if the thing directed to be done is the essence of the thing required, the statute is mandatory." *West Penn Power Company*, 104 Pa.Commonwealth Ct. at 27, 521 A.2d at 78.

Both sides here acknowledge that the Death Penalty Procedures Act, as embodied in 61 P.S. §§ 2122, 2123, itself states that it "is intended to furnish a comprehensive and complete method of inflicting the death penalty." Death Penalty Procedures Act, § 12, 61 P.S. § 2129. *Commonwealth v. Frey*, 520 Pa. 338, 342, 554 A.2d 27, 29 (1989), *cert. denied*, 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990).

The Governor's brief correctly and forthrightly points out that, as part of that comprehensive approach, 61 P.S. § 2123 directs that, after the Governor receives the record from the Supreme Court, he shall issue a warrant authorizing the Secretary of Corrections to carry out the execution during a specified week. Thus, the warrant provides the authorization for conducting an execution, schedules the execution and directs the officials immediately responsible for doing so.

Therefore, as suggested above, with the death warrant issuance being the first executive act in death penalty imposition, it marks the transfer of responsibilities in the matter from the judicial branch to the executive branch.

Accordingly, issuance of the death warrant is indispensable to carrying out the death penalty, and, because it is indispensable, this court must conclude that the Governor's duty is mandatory. Where the law provides that the *judicial* branch, after the conclusion of all appeals, shall delay no longer than *twenty days* in commencing the transfer of responsibility by transmission of the record, the conclusion must be that the Governor is obligated to establish a reasonably prompt time frame for the performance of the *executive* responsibilities.

Logically and understandably, the statute does not specify the scope of the executive time frame to be established by issuance of the death warrant; such a specification of that time frame would be no more feasible than an attempt to establish a time frame for the completion of all judicial appeals and review. However, the statute is clear that the Governor is required to establish a tentative time frame by the issuance of the warrant specifying a week for carrying out the execution. That time frame is tentative because it marks the period within which the executive pardoning power functions may occur under the constitution. The Pennsylvania Constitution, Article IV, Section 9(a) provides:

> In all criminal cases except impeachment, the Governor shall have the power ... to grant reprieves, commutation of sentences and pardons; but no pardon shall be granted, nor sentence commuted, except on the recommendation in writing of a majority of the Board of Pardons, after full hearing ....

Precisely because the Governor has the power, subject to Board of Pardons recommendation, to grant pardons and commutations and the power to grant reprieves when necessary during the executive phase of death sentence imposition, the Governor's duty to *embark* upon that phase by death warrant issuance is mandatory. The Death Penalty Proce-

dures Act is the law which states that the Governor shall issue the warrant, and the Pennsylvania Constitution, in Article IV, section 2 describes the highest duty of the Governor, to "take care that the laws be faithfully executed...."

■ When the legislature employs the word "shall" in a scrupulous manner, none of the branches of state government may ignore the mandate. *Zimmerman v. O'Bannon*, 497 Pa. 551, 442 A.2d 674 (1982) exemplified an instance in which the duty of the judicial branch admitted of no discretion; the Supreme Court held that a statutory provision—providing that an Attorney General's request for a judicial stay of a regulation disapproved by the Attorney General "shall be granted" by the judiciary—was mandatory, not leaving the courts with any discretion.

As a consequence of this court's jurisdiction over public sector subject matter, it has encountered previous occasions for considering the application of mandamus order to a duty of the Governor of the Commonwealth.

In *Zemprelli v. Thornburgh*, 47 Pa.Commonwealth Ct. 43, 407 A.2d 102 (1979) and in *Zemprelli v. Thornburgh*, 55 Pa.Commonwealth Ct. 330, 423 A.2d 1072 (1980) this court held that Section 8(b) of Article IV of the Pennsylvania Constitution, providing that the Governor "shall" fill vacancies in offices by submitting a nomination to the Senate "within 90 days of the first day of the vacancy and not thereafter", imposed a mandatory time limit, compelling the Governor to act within the stated time period in order to act with effect.

In *Keystone C., A.B. & C., Inc. v. Thornburgh*, 92 Pa.Commonwealth Ct. 646, 500 A.2d 211 (1985), this court again had to consider a gubernatorial duty, being called upon to decide whether, in the absence of a time frame being specified by the law, the Governor's duty to appoint an advisory board for administration of the Pennsylvania Prevailing Wage Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §§ 165–1 to 165–17. This court decided that the Governor's duty to create the advisory board and appoint its members was mandatory

because failure to do so on his part would constitute a negation of the law.

## 2. The Governor's Power To Issue Reprieves

The Governor here contends that, because the power of the Governor to issue reprieves under Section 9(a) of Article IV of the Pennsylvania Constitution is not subject to action by the Board of Pardons, hence gubernatorial delay with respect to the issuance of a death warrant, for whatever period, constitutes an exercise of the Governor's power of reprieve.

However, because there can be no reprieve with respect to *execution* of a death sentence until the *executive* branch has commenced that function, the Governor's power to reprieve is not relevant until an execution has been scheduled—namely, by the issuance of a death warrant.

As defined in Black's Law Dictionary, 1170 (5th Ed.1979), a "reprieve" is:

Temporary relief from or the postponement of execution of criminal punishment or sentence. It does no more than stay the execution of a sentence for a time, and is ordinarily an act of clemency extended to a prisoner to afford him an opportunity to procure some amelioration of the sentence imposed.

Thus, the power to reprieve also resides *within* the executive's phase of responsibility in dealing with death sentences. The executive branch does not undertake that responsibility until its acceptance is marked by the issuance of the death warrant, and hence the power to grant a reprieve is not relevant until after the issuance of the death warrant, from the completion of which the reprieve affords a delay.

In accordance with the clear concept of a reprieve, it exists only to stay a death warrant with reference to a particular proceeding, whether that particular proceeding be in the nature of clemency action, such as pardon or commutation involving the Board of Pardons, or even some resumption of judicial investigation pursuant to a petition for habeas corpus.

The conclusion must be that the Governor cannot forsake his obligation to "take care that the laws be faithfully executed" by contending that the failure to do what the law says that he "shall" do, constitutes the performance of the affirmative and definitive action known to the law as a reprieve.

## CONCLUSION

Although the laws in question recognize that the Governor is entitled to conduct his own reasonable review of the judicial record certified to him, in order to consider the time frame which he is to establish by naming of an execution week within the death warrant, there can be no doubt that the constitutional and statutory schemes contemplate that the Governor shall act within a reasonable time in completing his review of the record and issuing the death warrant. The laws specify no specific time limits for the courts and other adjudicative tribunals to reach decisions, but there is no doubt that mandamus is available to compel that they shall reach a decision. Likewise, inaction by the Governor for a period of more than three years in one case before us and more than five years in the other case, has clearly provided time enough for the Governor to act.

Therefore, issuance of peremptory judgment in mandamus is warranted, so that the Governor should be required to act upon each of these cases—within 30 days in the *Appel* case and within 60 days in the *Henry* case. With respect to either of these cases, three years or more has clearly afforded enough time for consideration of the record and determination of the schedule for executions.

## *ORDER*

NOW, April 21, 1994, pursuant to consideration of motion for peremptory judgment in mandamus, such judgment is hereby granted, commanding that respondent shall issue a death warrant in the matter herein, within thirty (30) days from the date of this order.

## ORDER

NOW, April 21, 1994, upon consideration of Respondents' Preliminary Objections, for the reasons stated in Opinion of this date relating to peremptory mandamus and dealing with the same questions of law, Respondents' Preliminary Objections are overruled.

## ORDER

NOW, April 21, 1994, pursuant to consideration of motion for peremptory judgment in mandamus, such judgment is hereby granted, commanding that respondent shall issue a death warrant in the matter herein, within sixty (60) days from the date of this order.

SMITH, J., dissents and files opinion.

KELLEY, Judge, filed dissenting opinion.

I respectfully dissent.

The majority concludes that the Governor must act within a reasonable time in issuing a death warrant under 61 P.S. § 2123 and that mandamus is therefore available to compel him to do so. This conclusion is reached even though the statute in question provides no time frame within which the Governor must act. The majority rejects the Governor's argument that gubernatorial delay with respect to the issuance of a death warrant is encompassed within the Governor's constitutional power to grant reprieves. The majority concludes that that power is not relevant until after the issuance of a death warrant. However, the language of the constitution contains no such limitation. The constitution states only that the Governor shall have the power to grant reprieves and does not limit that power until after a death warrant has been issued.

As the majority notes, a reprieve is simply the temporary relief from, or the postponement of execution of criminal punishment or sentence. The Governor's delay in issuing a death warrant has the effect of granting temporary relief from the execution of the sentence and is therefore the equivalent

of the grant of a reprieve. To compel him to issue such a warrant is therefore an interference with his power of reprieve and is a violation of the doctrine of separation of powers.

In *Moore Nomination Petition*, 447 Pa. 526, 291 A.2d 531 (1972), a congressional candidate argued that this court did not have jurisdiction of a challenge to his nomination petition because the court did not schedule a hearing on the objections within ten days of the last day on which the nomination petition could be filed. Section 977 of the Pennsylvania Election Code [1] states that the court "shall" schedule a hearing no later than ten days after the last day for filing the nomination petition. The Supreme Court held that the scheduling of the hearing was a purely judicial function and that the language in the Code was therefore directory and not mandatory.

Here we have an analogous situation where the petitioner is asking this court to interfere with a purely executive function, the decision whether to grant a death warrant. This case presents an even stronger situation than *Moore* for the conclusion that the language in the statute is directory because the statute contains no time limit for the Governor to take action.

The cases cited by the majority in support of its holding are clearly distinguishable. In *Zimmerman v. O'Bannon*, 497 Pa. 551, 442 A.2d 674 (1982), the Supreme Court held that where statutory language provided that a stay of a regulation shall be granted by the judiciary when the Attorney General so requests, the courts were not left with any discretion as to whether to grant the stay. *Zimmerman* did not involve the interference with a purely judicial function and did not involve an attempt to force the courts to act within a timeframe not specified in a statute.

In *Zemprelli v. Thornburgh (Zemprelli II)*, 55 Pa.Commonwealth Ct. 330, 423 A.2d 1072 (1980), this court was asked to interpret article IV, § 8(b) of the Pennsylvania Constitution which states that "The Governor shall fill vacancies in offices to which he appoints by nominating to the Senate a proper person to fill the vacancy within 90 days of the first day of the

1. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2937.

vacancy and not thereafter." We held that the 90–day time limit is mandatory and that the Governor cannot make an appointment after the time limit has expired.

*Zemprelli II* involved a *constitutional* provision delineating a *specific* timeframe for the Governor to take action. In the present case, we have an attempt to enforce *statutory* language which gives no specific timeframe, and the result of such enforcement will be the interference with a constitutionally granted discretionary executive power. It is very instructive that the court in *Zemprelli II* did not hold that the Governor was compelled to fill vacancies. The court merely held that if the Governor did not fill such vacancies within 90 days, he could not do so thereafter because of the clear language of the constitution. The court recognized that the Governor retained the executive prerogative to leave vacancies unfilled.

The majority also cites *Keystone Chapter, Associated Builders and Contractors, Inc. v. Thornburgh,* 92 Pa.Commonwealth Ct. 646, 500 A.2d 211 (1985), in which this court held that the Governor's duty to appoint an advisory board for administration of the Wage Act was mandatory because failure to do so would constitute an improper veto of a program created by the legislature. Again, that case did not involve the interference with a constitutionally created executive function. In the present case the Governor's delay in issuing death warrants in particular cases will not result in an improper veto of the Death Penalty Procedures Act or of the death penalty itself. It is simply an exercise of the Governor's proper executive powers.

Finally, I wish to note that mandamus is available only where the party seeking the order has a clear legal right to relief. I do not see how the petitioners in the present case can be said to have a clear right to relief when the statute in question does not create a time limit for the Governor to act.

For the foregoing reasons, I would deny the motions for peremptory judgment and sustain the Governor's preliminary objections.